UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Avarden Investments, LLC

    v.                                    Civil No. 16-cv-014-LM
                                              Opinion No. 2016 DNH 162
Deutsche Bank National Trust
Company


# O R D E R

Avarden Investments, LLC brings suit against Deutsche Bank
National Trust Company, after Deutsche Bank terminated their
real estate purchase agreement.  Avarden alleges that Deutsche
Bank wrongfully terminated the agreement on the eve of the
closing.  Deutsche Bank moves to dismiss the lawsuit, arguing
that the parties' agreement expressly permits the termination
and limits Avarden's relief to the return of its security
deposit, which both parties agree Deutsche Bank returned to
Avarden shortly following the termination.  Avarden objects.

Avarden has also moved to amend its complaint.  Deutsche
Bank objects, arguing that the proposed amended complaint is
futile for the same reasons presented in its motion to dismiss.


## Procedural Background

Avarden, proceeding pro se, brought suit in state court
against Deutsche Bank, alleging claims for breach of contract,
breach of the implied covenant of good faith and fair dealing,

violation of New Hampshire's Consumer Protection Act, and fraud. Deutsche Bank removed the suit to this court and moved to dismiss Avarden's suit for failure to state a claim.  Avarden then obtained counsel and through that counsel filed an objection to Deutsche Bank's motion to dismiss.  Avarden's objection also requested the opportunity to amend its complaint.

In a procedural order, the court granted Avarden leave to move to amend its complaint and held Deutsche Bank's motion to dismiss in abeyance, pending the outcome of Avarden's anticipated motion to amend.  Doc. no. 17.  In its order, the court observed that Avarden's request to amend was procedurally improper under the local rules of this district.  The court recognized the request, however, based on equitable factors, including that Avarden was pro se when it filed its complaint. The court also required that "Avarden's motion to amend shall comply with the local rules of this district."  Doc. no. 17 at 2.

In June 2016, Avarden moved to amend its complaint.  Doc. no. 18.  The proposed amended complaint, which Avarden has filed with its motion, asserts the same claims as those contained in Avarden's original complaint.  Deutsche Bank objected to the motion to amend, and Avarden filed a reply to that objection.

**Discussion**

I.   Motion to Amend

Avarden moves to amend its complaint to include "specific details and the particular circumstances constituting the fraud claim." Doc. no. 18. Deutsche Bank objects. In support, Deutsche Bank contends that Avarden's motion is futile and does not comply with the local rules of this district.

In response to a motion to amend a complaint, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). To decide if justice requires leave to amend, the court considers all of the circumstances to "balance [] pertinent considerations." Palmer v. Champion Mortg., 465 F.3d 24, 30-31 (1st Cir. 2006). Generally, the motion should be allowed in the absence of "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).

An amendment is futile if it cannot survive the standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 132 (1st Cir. 2006). In considering a motion under

3

Rule 12(b)(6), the court assumes the truth of the properly pleaded facts and takes all reasonable inferences from the facts that support the plaintiff's claims. Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 104 (1st Cir. 2015). Based on the properly pleaded facts, the court determines whether the plaintiff has stated "a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A. Factual Background[1]

Gabrielle Bilc is the former resident and mortgagor of a property located at 95 Jenkins Road in Bedford, New Hampshire ("the property"). In May 2011, Deutsche Bank, who had acquired the mortgage, foreclosed on the property. Deutsche Bank then recorded a foreclosure deed on the property. About two years after recording that deed, Deutsche Bank offered the property for sale at auction.

---

[1] The facts in this section are taken from the proposed amended complaint that Avarden filed with its motion to amend, doc. no. 18-1, and the parties' purchase agreement, which Deutsche Bank relies on in its objection to the motion to amend. Because the purchase agreement is referenced in the proposed amended complaint and forms the basis of Avarden's claims, the court may consider it here. See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (internal citation omitted) (courts may consider "documents central to [a] plaintiff['s] claim" and "documents sufficiently referred to in the complaint"); see also Fed. R. Civ. P. 12(d).

At that auction, Avarden made the successful bid.  Deutsche Bank and Avarden then entered into a purchase agreement governing the sale of the property.  Bilc, serving as Avarden's manager,[2] signed the purchase agreement on Avarden's behalf on July 1.  Doc. no. 5-3 at 24.  On July 24, JP Morgan Chase Bank, acting as Deutsche Bank's attorney-in-fact, executed the purchase agreement and delivered the executed agreement to Avarden.  Avarden alleges that before the execution of the purchase agreement it disclosed to Deutsche Bank that it had agreed to lease the property to Bilc and that Deutsche Bank approved this disclosure in mid-July.

The purchase agreement set the closing date for the sale as July 31, 2014.  In addition, pursuant to the purchase agreement, Avarden was required to pay a $13,500 earnest money deposit, which it did.

The purchase agreement contains three provisions that are central to the parties' dispute.  First, the cover page of the purchase agreement contains a provision limiting Avarden's

---

[2] Avarden is a limited liability company organized under the laws of New Hampshire.  New Hampshire law permits a limited liability corporation to assign management responsibility of a limited liability company to a "manager."  RSA 304-C:13 ("'Manager' means a person who is named or designated as a manager of a limited liability company in an operating agreement.").

remedy to the return of its deposit in the event of a Deutsche Bank breach or default before the sale's closing.  That provision provides, in pertinent part:

> NOTWITHSTANDING ANY PROVISION TO THE CONTRARY IN THIS AGREEMENT, SELLER'S LIABILITY AND BUYER'S SOLE AND EXCLUSIVE REMEDY IN ALL CIRCUMSTANCES AND FOR ALL CLAIMS (AS THE TERM IS DEFINED IN SECTION 9 OF THIS AGREEMENT . . . ) . . . ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT OR THE SALE OF THE PROPERTY TO BUYER, INCLUDING . . . SELLER'S BREACH OR TERMINATION OF THIS AGREEMENT . . . SHALL BE LIMITED TO NO MORE THAN . . . A RETURN OF BUYER'S EARNEST MONEY DEPOSIT IF THE SALE TO BUYER DOES NOT CLOSE . . . .

Doc. no. 5-3 at 1.[3]  Second, the next page of the purchase agreement contains a provision in which Avarden agreed to "waive[]. . . all rights to file and maintain an action against the seller for specific performance."  Id. at 2.

Finally, Avarden and Deutsche Bank also executed a "seller's auction addendum" to the purchase agreement.  Id. at 28.  That addendum contains a termination option granting Deutsche Bank the power to terminate the purchase agreement under certain enumerated circumstances.  One of the

---

[3] Section 9 of the purchase agreement contains a broad definition of "claims," which includes, in part, "ANY AND ALL CLAIMS, CAUSES OF ACTION, WHETHER ADMINISTRATIVE OR JUDICIAL . . . OF ANY KIND WHATSOEVER, WHETHER KNOWN OR UNKNOWN . . . . ARISING FROM OR RELATING TO THE PROPERTY."  Purchase Agreement, Doc. no. 5-3 at § 9.

circumstances in which Deutsche Bank can terminate the agreement
is if the buyer is the former mortgagor or is affiliated with
the former mortgagor.  The termination option provides, in
pertinent part, that Deutsche Bank has:

> the right, in its sole discretion, to . . . terminate
> the Agreement if . . . Buyer is the former mortgagor
> of the Property whose interest was foreclosed . . . or
> is related to or affiliated in any way with the former
> mortgagor, and Buyer has not disclosed this fact to
> Seller in writing prior to Seller's acceptance of the
> Agreement and this Addendum.

Seller's Addendum, Doc. no. 5-3 at § 9(i).

On July 30, a day before the sale was scheduled to close
and six days after the agreement was finalized, Deutsche Bank
informed Avarden that it was terminating the purchase agreement.
Nicole Wilson, the transaction's closing coordinator, told Bilc
that she was terminating the agreement because she had "been
advised that you are the former foreclosed mortgagor on this
property."  Doc. no. 18-1 at ¶ 20.  Wilson further requested
that Bilc "sign and return the attached termination at your
soonest convenience so that we can get your Earnest Money
deposit returned back to you."  Id.

In response, Avarden insisted that the purchase agreement
could not be terminated and that the parties should move forward
with the transaction.  Despite Avarden's position, Deutsche Bank

terminated the purchase agreement.  Deutsche Bank returned
Avarden's deposit after it terminated the purchase agreement.

### B. Futility

Deutsche Bank contends that Avarden's motion to amend
should be denied as futile because the facts alleged in the
amended complaint do not support viable claims.  In response,
Avarden argues that the court should grant its motion because
the amended complaint presents "actionable claims."  The amended
complaint alleges four separate claims; the court discusses each
below.

#### 1.  Breach of Contract

Deutsche Bank asserts that Avarden's proposed amended
complaint fails to state a claim for breach of contract because
the purchase agreement (1) limits Avarden's damages to the
deposit that it already received and (2) entitles Deutsche Bank
to terminate the agreement based on Avarden's affiliation with
Bilc.  In response, Avarden contends that it has properly
alleged its breach of contract claim.

The interpretation of a contract, including whether a
contract term is ambiguous, is ultimately a question of law.
Birch Broad., Inc. v. Capitol Broad. Corp., 161 N.H. 192, 196
(2010).  When interpreting a contract, the court must "give the

language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole." In re Liquidation of Home Ins. Co., 166 N.H. 84, 88 (2014) (internal quotations omitted).  Absent ambiguity, however, "the parties' intent will be determined from the plain meaning of the language used in the contract." Id. (internal quotations omitted).  "The language of a contract is ambiguous if the parties to the contract could reasonably disagree as to the meaning of that language." Found. for Seacoast Health v. Hosp. Corp. of Am., 165 N.H. 168, 172 (2013) (quoting Birch Broad., 161 N.H. at 196).

### a. Limitation of Remedies

Deutsche Bank contends that Avarden's claim for breach of contract is implausible because it returned Avarden's earnest money deposit.  In support, Deutsche Bank points to the remedy limitation on the first page of the purchase agreement, which, it contends, limits Avarden's remedy to the return of its earnest money deposit in the event that the sale did not close. Avarden does not address the remedy limitation in its motion or reply.

"Limitations of damages are generally enforced under New Hampshire law." Colonial Life Ins. Co. of Am. v. Elec. Data Sys. Corp., 817 F. Supp. 235, 239 (D.N.H. 1993); see also Shaer Shoe Corp. v. Granite State Alarm, Inc., 110 N.H. 132 (1970). Here, the purchase agreement provides that if the sale does not close, Avarden's "sole and exclusive" remedy "in all circumstances and for all claims, . . . including Seller's breach or termination . . . shall be limited to" the return of its deposit. Doc. no. 5-3 at 1. The plain and unambiguous meaning of that language allows Deutsche Bank to terminate the purchase agreement before closing in exchange for the return of Avarden's deposit. This interpretation is reasonable based on the purchase agreement's express terms and the short duration between the agreement's execution and the scheduled closing date. Further, Avarden does not offer an alternative interpretation of the remedy limitation that could render it ambiguous.[4]

_____

[4] A similar remedies limitation provision was construed as ambiguous in Embree v. Bank of New York Mellon, No. 12-cv-462-JL, 2013 WL 6384776, at *4-5 (D.N.H. Dec. 6, 2013). In Embree, the court agreed with the plaintiffs' argument that the provision could reasonably be interpreted as limiting the seller's liability only in circumstances where the seller's breach was unintentional. Id. at 4. The Embree plaintiffs' argument was based on the "unique circumstances" of that case, in which a foreclosure deed had not been filed for the property and, therefore, the seller's ability to obtain title was in

Therefore, the court holds that the purchase agreement unambiguously bars Avarden from recovering any contractual remedies for Deutsche Bank's pre-closing default that exceed the return of its deposit.  Because Avarden has conceded that Deutsche Bank returned its deposit, it has not stated a plausible claim for relief based on Deutsche Bank's termination of the purchase agreement.[5]  Accordingly, Avarden's breach of contract claim is futile.

### b. Bilc Affiliation

Deutsche Bank also contends that it had the right to terminate the purchase agreement when it learned that Avarden was affiliated with Bilc.  Avarden, on the other hand, contends

---

question when the parties negotiated the contract.  Id.  That situation is not present here.  Further, unlike the plaintiffs in Embree, Avarden has not offered any alternative interpretation of the remedies limitation.

[5] The New Hampshire Supreme Court has observed in dicta that "wanton and willful conduct intended to harm is not subject" to limitation of liability clauses.  PK's Landscaping, Inc. v. New England Tel. & Tel. Co., 128 N.H. 753, 757 (1986) (2-2 decision, per curiam) (affirming lower court's enforcement of remedy limitations clause).  Avarden, however, has alleged no facts from which the court could infer that Deutsche Bank's conduct rose to that heightened level of culpability.  See Russell Pub. Grp., Ltd. V. Brown Printing Co., 13-cv-5193-SAS, 2015 WL 500174, at *1 (S.D.N.Y. Feb. 5, 2015) (noting that intentional breach alone, without intent to harm or gross negligence, "will not render a limitation of liability clause unenforceable").

that Deutsche Bank had no such right because it disclosed that Bilc had agreed to lease the property before the auction. Because the court has concluded that the limitation of remedies clause prohibits Avarden's claims, it need not address whether Deutsche Bank was entitled to terminate the agreement based on Avarden's affiliation with Bilc.

### 2. Covenant of Good Faith and Fair Dealing

The proposed amended complaint alleges that Deutsche Bank breached its implied duty under the purchase agreement "to exercise good faith and fair dealing in the conduct of its business dealings with the plaintiffs." Doc. no. 18-1 at ¶ 42. In response, Deutsche Bank contends that Avarden's claim for breach of the implied covenant of good faith and fair dealing is futile based on the same provisions that it cited in support of its argument against the breach of contract claim.

New Hampshire law recognizes "[i]n every agreement . . . an implied covenant that the parties will act in good faith and fairly with one another." Birch Broad., 161 N.H. at 198. That covenant encompasses three general duties of good faith relating to: "(1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance." Id. Avarden's implied covenant claim

concerns the third category,[6] "the broader function" of which
"is to prohibit behavior inconsistent with the parties' agreed-
upon common purpose and justified expectations as well as with
common standards of decency, fairness and reasonableness." Id.
(internal quotations omitted).

In accord with this function, "'the duty of good faith and
fair dealing ordinarily does not come into play in disputes'
where 'the underlying contract plainly spells out both the
rights and duties of the parties and the consequences that will
follow from a breach of a specified right.'" Rouleau v. US
Bank, N.A., No. 14-cv-568-JL, 2015 WL 1757104, at *4 (D.N.H.
Apr. 17, 2015) (quoting Milford-Bennington R. Co. v. Pan Am
Railways, Inc., No. 10-cv-00264-PB, 2011 WL 6300923, at *5
(D.N.H. Dec. 16, 2011), aff'd, 695 F.3d 175 (1st Cir. 2012)).

As the court discussed above, the purchase agreement
plainly sets forth a contractual scheme in which Avarden's only
remedy in the event the sale did not close was the return of its

---

[6] Because Avarden's proposed amended complaint does not
allege a misrepresentation during contract formation and does
not concern an employment contract, the court will construe its
implied covenant claim as a claim regarding Deutsche Bank's use
of discretion during contract performance. See Centronics Corp.
v. Genicom Corp., 132 N.H. 133, 139 (1989) (noting that the good
faith and fair dealing duty concerning contract formation is
"tantamount" to the duty "to refrain from misrepresentation and
to correct subsequently discovered error").

deposit.  For this reason, Avarden could not have justifiably expected that it would be entitled to the damages that it now seeks based on Deutsche Bank's pre-closing termination.  See Goodwin v. Hole No. 4, LLC, No. 2:06 CV 00679, 2007 WL 2221066, at *9 (D. Utah July 31, 2007) (rejecting implied covenant claim where parties agreed to limit the buyers' remedies to the return of their deposit plus interest because it "would be unjustified for the [buyers] to expect more than [that] remedy").  Accordingly, Avarden has failed to allege a claim for breach of the implied covenant of good faith and fair dealing based on Deutsche Bank's termination of the purchase agreement.  Avarden's proposed amendment to this claim is therefore futile.

### 3. Consumer Protection Act Claim

The proposed amended complaint asserts a claim under New Hampshire's Consumer Protection Act ("CPA"), RSA Chapter 358-A. Deutsche Bank contends that the proposed amended complaint fails to state a claim under the CPA because Deutsche Bank is exempt from CPA regulation and because Avarden has not alleged facts that constitute a violation of the CPA.  In response, Avarden argues that Deutsche Bank's claimed exemption is not applicable.

14

The CPA prohibits persons from using "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within" New Hampshire.  RSA 358-A:2.  Although the statute is broadly worded, "not all conduct in the course of trade or commerce falls within its scope." Axenics, Inc. v. Turner Const. Co., 164 N.H. 659, 675 (2013).[7] "An ordinary breach of contract claim, for example, is not a violation of the CPA." Id.  Rather, conduct falls within the CPA's prohibition if it "attain[s] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Id. at 675-76 (internal quotations omitted).

Avarden's proposed amended complaint alleges that Deutsche Bank "has committed and continues to commit acts that constitute unfair and deceptive acts and practices."  Doc. no 18-1 at ¶ 37.  Beyond this conclusory statement, however, there are no factual allegations that Deutsche Bank engaged in any conduct from which this court could plausibly infer that Deutsche Bank violated the CPA.  Avarden alleges that Deutsche Bank agreed to sell it the property and then terminated the purchase agreement before the

---

[7] The CPA includes a non-exhaustive list of sixteen actions that fall within its prohibition.  R.S.A. 358-A:2.  None of those categories is applicable here.

sale's closing.  That might constitute an ordinary breach of contract claim, but it is not the type of conduct that would "raise the eyebrow" of a person experienced in the "rough and tumble of the world of commerce."  See Axenics, 164 N.H. at 675-76.  Accordingly, Avarden's CPA claim is futile.[8]

### 4. Fraud Claim

The fraud claim in the proposed amended complaint is based on the allegation that Deutsche Bank "made false statements of material fact to [Avarden] . . . ; including, but not limited to, the defendant's knowingly false representation that Bilc was the purchaser of the [property]."  Doc. no. 18-1 at ¶ 48. Deutsche Bank contends that this claim is futile because Avarden has failed to plead the elements of fraud with the required specificity.

To prove fraud, Avarden must show that Deutsche Bank knowingly made a false statement to it for the purpose of inducing it to rely on that statement, that it did justifiably rely on that statement, and that such reliance caused it pecuniary loss.  Tessier v. Rockefeller, 162 N.H. 324, 331-32

---

[8] Because Avarden has failed to allege facts stating a claim under the CPA, the court need not address whether Deutsche Bank is exempt from CPA regulation under the circumstances alleged in the proposed amended complaint.

(2011).  Further, under Federal Rule of Civil Procedure 9(b),
Avarden is required "to plead the circumstances of fraud with
heightened specificity." In re Genzyme Corp. Sec. Litig., 754
F.3d 31, 40 (1st Cir. 2014).  Those circumstances include "what,
specifically, was stated," the "specific nature" of a
plaintiff's injury, and the plaintiff's actual reliance on the
alleged false statements. Woods v. Wells Fargo Bank, N.A., 733
F.3d 349, 358 (1st Cir. 2013).

The only specific misrepresentation alleged in Avarden's
proposed amended complaint is that Deutsche Bank made a false
statement to it while terminating the purchase agreement.  The
proposed amended complaint, however, contains no allegations
from which this court could plausibly infer that Avarden
reasonably relied on that allegedly false statement or that any
such reliance resulted in pecuniary loss.  Avarden's proposed
amended complaint contains only a conclusory allegation that it
"reasonably and justifiably relied on [Deutsche Bank's]
fraudulent misrepresentations to their [sic] detriment and acted
accordingly."  Doc. no. 18-1 at ¶ 50.  Avarden does not allege
any specific action that it took or refrained from taking in
reliance on Deutsche Bank's alleged misrepresentation.  Nor does
it allege any harm that followed from its alleged reliance on
Deutsche Bank's misrepresentation.

17

Because of these deficiencies, the allegations in the proposed amended complaint are insufficient to state a fraud claim, and any such amendment would be futile.

C. <u>Failure to Comply with Local Rule 15</u>

Avarden's motion to amend is also denied because it fails to comply with Local Rule 15.1.  Under Local Rule 15.1(a), a party moving to amend its complaint must "identify in the motion or a supporting memorandum any new factual allegations, legal claims, or parties, and explain why any new allegations, claims, or parties were not included in the original filing."  L.R. 15.1(a)(ii)-(iii).  The court specifically cited these provisions of Local Rule 15.1 in its procedural order and instructed Avarden that its motion "shall comply with the local rules of this district."  Doc. no. 17 at 1-2.

Avarden's motion to amend contains five one sentence paragraphs.  The first four paragraphs provide detail on the procedural background leading to Avarden's motion to amend.  The fifth paragraph states that "the amended complaint includes specific details and the particular circumstances constituting the fraud claim."  Doc. no. 18 at ¶ 5.  That vague statement about only one of the proposed amended claims fails to comply with the requirements of Local Rule 15.1.  Thus, even absent

18

futility as a basis to deny Avarden's motion to amend, the court would deny the motion for its failure to comply with Local Rule 15.1.

II.  Motion to Dismiss

The court will now turn to Deutsche Bank's pending motion to dismiss Avarden's original complaint.  Deutsche Bank's motion to dismiss is based on the same arguments underlying its argument that the proposed amended complaint is futile.  In other words, Deutsche Bank contends that Avarden's original complaint suffers from the same pleading defects contained in Avarden's proposed amended complaint.

The court agrees.  Avarden's contract claims are not viable because the underlying purchase agreement limits Avarden's remedies to the return of its deposit, which it already received.  Further, there are no allegations in Avarden's original complaint from which the court could infer that Deutsche Bank engaged in conduct that would be actionable under the CPA.  Finally, just like the proposed amended complaint, the original complaint fails to identify any specific action that Avarden undertook in reliance on Deutsche Bank's alleged misrepresentation or any harm that resulted from such reliance. In short, because Avarden's original complaint is not materially

different from its proposed amended complaint, it fails to state a claim for relief for the same reasons that the proposed amended complaint is futile.

Nevertheless, Avarden appears to argue that its contract claims should survive because the purchase agreement was unconscionable.  In support, Avarden contends that "a careful examination of the lengthy and dense Purchase Agreement provides evidence the Plaintiff could not have entered into the agreement freely and openly."  Doc. no. 8-1 at ¶ 25.  That argument fails, however, because Avarden's complaint contains no allegations supporting its unconscionability theory.

To show unconscionability, Avarden must plead "that [it] had an 'absence of meaningful choice' when entering the contract, and that the contract terms are 'unreasonably favorable' to the other party."  Bourne v. Stewart Title Guar. Co., No. 09-CV-00270-PB, 2011 WL 635304, at *6 (D.N.H. Feb. 16, 2011) (quoting Pittsfield Weaving Co. v. Grove Textiles, Inc., 121 N.H. 344, 346 (1981)).  Yet, Avarden has alleged no facts that would allow the court to conclude that the purchase agreement or any provision in it is unconscionable.  There are no allegations concerning the parties' respective bargaining power or the negotiation process that preceded the purchase agreement.  Moreover, Avarden has not identified any provision

in the contract that it contends is unreasonably favorable to
Deutsche Bank.  Therefore, Avarden's unconscionability argument
lacks merit.

Accordingly, Avarden's complaint must be dismissed.

### Conclusion

For the foregoing reasons, Deutsche Bank's motion to
dismiss (doc. no. 5) is granted, and Avarden's motion to amend
its complaint (doc. no. 18) is denied.  Avarden's complaint
(doc. no. 1-1) is dismissed with prejudice.  The clerk of court
shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 15, 2016

cc:  Kenneth R. Bernard, Esq.
     Nathan Reed Fennessy, Esq.